UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| JARED L. WHITT, ) | |
| ) | |
| Plaintiff, ) | Case No. 8:12-CV-00358 |
| ) | |
| v. ) | **BRIEF IN SUPPORT OF MOTION** |
| ) | **FOR SUMMARY JUDGMENT** |
| ) | **ON THIRD CLAIM FOR RELIEF** |
| UNION PACIFIC RAILROAD CO., ) | |
| ) | |
| Defendant. ) | |

Although there are hotly disputed issues of fact in this case, it is <u>not</u> disputed that Plaintiff's second and third claims for relief both seek damages as a result of alleged actions of Defendant Union Pacific Railroad Company ("Union Pacific") on June 28, 2012. It is further <u>not</u> disputed that on that day, Plaintiff was working near Chicago, Illinois, and suffered an alleged heat-related injury. It is also <u>not</u> disputed that a Union Pacific manager, Talmage Dalebout, spoke to Plaintiff by telephone while he was being driven to the hospital that day. What occurred during and after that telephone call <u>is</u> disputed. For example, there is a factual dispute between Union Pacific's witnesses, who testified that Plaintiff voluntarily chose to return to the railyard after being given several chances to continue to the hospital, and Plaintiff, who argues that Dalebout made the decision unilaterally.

But these (and other) factual disputes, while material to the merits of Plaintiff's claims, are <u>not</u> material as to whether, as a matter of law, Plaintiff may seek relief under two separate provisions of federal law for the same alleged misconduct. In his second claim for relief, Plaintiff alleges that Dalebout's actions (as well as those of others) caused him to suffer personal injuries for which he seeks recovery under the Federal Employers' Liability Act (the "FELA"),

5996289.15

45 U.S.C. §§ 51-60. In his third claim for relief, Plaintiff alleges that Dalebout's same conduct also violated 49 U.S.C. § 20109(c)(1), which prohibits a railroad from taking action to "deny, delay, or interfere with the medical or first aid treatment of an employee who is injured in the course of employment."[1]

Union Pacific files the present Motion under 49 U.S.C. § 20109(f), which provides that "[a]n employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier." Union Pacific had originally made a similar argument in a Motion to Dismiss Count III of the Second Amended Complaint. [Docket No. 59] In denying that Motion [Docket No. 106], the Court invited Union Pacific to refile its Motion as one for summary judgment if, after discovery, Defendant believed that this was still an issue. Because of the importance of this issue on which the Eighth Circuit has never spoken, and because discovery has confirmed that Plaintiff is definitely seeking protection under both § 20109 and another provision of law based on the same allegedly unlawful act, Union Pacific files this Motion for Summary Judgment with regard to Plaintiff's third claim for relief.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, Union Pacific provides the following statement of undisputed material facts. Union Pacific assumes these facts to be true solely for purposes of the present Motion.

1. This Court has subject matter jurisdiction of this case under 28 U.S.C. § 1331 because Plaintiff alleges violations of two federal laws – the Federal Employers' Liability Act, 45

---

[1] Plaintiff's first claim for relief alleges that Union Pacific's negligence caused him to suffer an injury on June 12, 2012. That claim is not relevant to the present Motion.

U.S.C. §§ 51-60 ("FELA"), and a provision of the Federal Rail Safety Act, 49 U.S.C. § 20109(c)(1). Second Amended Complaint, Docket No. 54, ¶¶ 5, 38.

2. Under FELA's venue provisions, an action may be brought in a district court: (1) in which the defendant resides, (2) where the cause of action arose, or (3) where the defendant was doing business at the commencement of the action. 45 U.S.C. § 56. Venue is proper in this Court because Union Pacific is engaged in the business of a common carrier by railroad in interstate commerce in this District. Second Amended Complaint, ¶ 2.

3. In June 2012, Plaintiff was working for Union Pacific near Chicago, Illinois, as an anchor applicator operator. Second Amended Complaint, ¶ 19; Deposition of Jared Whitt ("Whitt Dep."), attached hereto as Exhibit A, at 35:10-13; 35:21-23.

4. Plaintiff was working for Union Pacific on June 28, 2012. Second Amended Complaint, ¶ 19. The temperature was very high that day. Second Amended Complaint, ¶ 20; Whitt Dep. 81:18-24.

5. At approximately 4:00 p.m., Plaintiff felt himself growing weak and felt tingling in his extremities and lips. Second Amended Complaint, ¶ 22. Assistant Foreman Eddy Ornellas found Plaintiff lying down under a tree and went to get Plaintiff help. Deposition of Eddy Ornellas ("Ornellas Dep."), attached hereto as Exhibit B, at 13:15-14:10. Plaintiff was placed into the truck of supervisor David Birt, and Birt began driving Plaintiff to the hospital. Id.; Whitt Dep. 87:3-22.

6. While Birt was driving Plaintiff to the hospital, Talmage Dalebout, a Union Pacific manager, called Birt and asked to speak to Plaintiff. Whitt Dep. 87:23-88:16.

7. According to Plaintiff, Plaintiff told Dalebout that his arms were numb and tingling and Dalebout indicated that he thought Plaintiff may have gotten too hot. Whitt Dep. 88:17-89:7. Dalebout asked if Plaintiff wanted to return to the railyard to go to the cooling tent and Plaintiff claims he said, "I just want fixed." Whitt Dep. 92:13-22. According to Plaintiff, he did not tell Dalebout whether he wanted to return to the yard or go to the hospital. Whitt Dep. 93:1-16.

8. Birt testified that after the telephone call from Dalebout, Birt asked Plaintiff three or four times whether he wanted to go to the hospital. Plaintiff stated that he felt better and wanted to return to the yard to the cooling station. Deposition of David Birt ("Birt Dep."), attached hereto as Exhibit C, at 30:11-19. After Plaintiff and Birt spoke to Dalebout, Birt and Plaintiff returned to the railyard. Whitt Dep. 88:17-89:1.

9. At the railyard, Plaintiff was given fluids, wrapped in cooling cloths, and was placed in an air conditioned trailer. Whitt Dep. 88:25-89:22.

10. That evening, after ending his work day and returning to the hotel at which he was staying, Plaintiff sought medical attention at a hospital. Second Amended Complaint, ¶ 24; Whitt Dep. 102:12-15; 102:19-20. Plaintiff claims that he was subsequently treated for heat stroke and other conditions. Second Amended Complaint, ¶ 29; Whitt Dep. 118:13-20.

11. Both Plaintiff's second and third claims for relief arise out of the events of June 28, 2012. Second Amended Complaint, ¶¶ 20-23, 45.

12. Plaintiff's second claim for relief arises under the FELA. Specifically, Plaintiff alleges that he sustained injuries as a result of Union Pacific's negligence, including Dalebout's

telephone call and Union Pacific's alleged failure to recognize and respond appropriately to the alleged heat-related incident. Second Amended Complaint, ¶¶ 30(b)-(c).

13. During this litigation, Plaintiff identified Douglas Casa, Ph.D., as an expert with information supporting his claims. Plaintiff's Identification of Expert Witnesses, attached hereto as Exhibit D. Casa's deposition testimony contains opinions regarding the propriety of Dalebout's conduct. Casa testified that Plaintiff should have been transported as quickly as possible to a hospital without stopping mid-way to return to the railyard. Deposition of Douglas Casa ("Casa Dep."), attached hereto as Exhibit E, at 92:24-93:3; 101:3-13. Casa opined that Plaintiff suffered from heat stroke and testified that, when a heat stroke occurs, a manager should not overrule an on-the-scene decision to go to the hospital. Casa Dep., 48:2-7, 187:17-189:22. Casa also testified that it was error to listen to a patient suffering from heat illness regarding what he wants to do or describing how he was feeling. Casa Dep., 107:4-15.

14. Casa further testified that Plaintiff was not treated appropriately on June 28, 2012, based on his condition. Casa Dep. 104:3-105:18. However, up to the point that Birt received the call from Dalebout, Casa did not have any issues with Plaintiff's treatment by Union Pacific. Casa Dep. 111:23-113:3.

15. Casa opined that the delay in getting Plaintiff to the hospital caused or contributed to a greater injury as a result of the heat exposure. Casa Dep. 203:16-21; 207:8-18. Casa similarly opined that the delay in getting Plaintiff to the hospital caused or contributed to the slowness of Plaintiff's recovery from alleged heat stroke. Casa Dep. 204:11-17.[2]

---

[2] Union Pacific has filed a motion in limine regarding the opinions in paragraph 15 because they do not meet the standards for admissibility under Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579, 589 (1993). [Docket No. 111.] Union Pacific does not waive those arguments; it adds these opinions herein to show that Plaintiff is using Dalebout's actions to bolster both his FELA and § 20109 claims.

16. Plaintiff also identified George Gavalla as an expert witness. Exhibit D. In his report, Gavalla alleges that during the June 28, 2012, incident, Union Pacific "neglected to follow several important provisions of its own [Heat Stress Prevention] policy." Report of George Gavalla, attached hereto as Exhibit F, at 9.

17. Specifically, Gavalla opines that Dalebout's call to Birt, that resulted in a delay in his going to the hospital, violated Union Pacific's own Heat Policy. Id. at 9, 19-20.[3]

18. Plaintiff's third claim for relief also attacks Dalebout's actions. Specifically, Plaintiff alleges that Dalebout's actions violated 49 U.S.C. § 20109(c)(1), which prohibits a railroad from taking action to "deny, delay, or interfere with the medical or first aid treatment of an employee who is injured in the course of his employment." Second Amended Complaint, ¶¶ 38, 40, 45.

19. On November 23, 2012, Plaintiff filed a complaint with the Occupational Safety & Health Administration ("OSHA") alleging a violation of 49 U.S.C. § 20901 as required by 49 U.S.C. § 20901(d)(1)(2)(A)(ii). First Amended Complaint, Docket No. 35, ¶ 45.

20. Plaintiff's administrative complaint was subsequently dismissed by OSHA under 49 U.S.C. § 20109(f), which provides that "an employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier." Id.

21. In Plaintiff's Brief in Support of his Motion for Partial Summary Judgment [Docket No. 140], Plaintiff seeks to prove a violation of 49 U.S.C. § 20109(c)(1), in part, by

---

[3] Union Pacific has also filed a motion in limine to exclude these opinions on grounds that Gavalla is not offering any true expert opinion, but is simply reading a policy and giving the jury his interpretation thereof. [Docket No. 101.] Again, Union Pacific does not waive those arguments and mentions these opinions to show the overlap between Plaintiff's FELA and § 20109 claims.

arguing that Dalebout's actions violated Union Pacific's policies. Docket No. 141, at Statement of Facts, ¶¶ 20-22.

## ARGUMENT

The instant Motion presents a simple issue controlled by straightforward statutory language. Plaintiff's second claim for relief alleges that Union Pacific was negligent in connection with Plaintiff's June 28, 2012, heat-related injury. Part of that negligence stems from the fact that Dalebout allegedly delayed Plaintiff's medical treatment by speaking to Plaintiff on the telephone while he was on his way to the hospital and having Plaintiff return to the railyard. Plaintiff's own expert witnesses' reports and deposition testimony reveal that he is claiming that Dalebout's actions were negligent and inappropriate under the circumstances. At the same time, Plaintiff's third claim for relief alleges that this exact same conduct violates 49 U.S.C. § 20109(c)(1). Because 49 U.S.C. § 20109(f) specifically prohibits such duplicative claims, this Court should grant summary judgment to Union Pacific on Plaintiff's third claim for relief.

**A.      Legal Standard**

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmovant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 321-23 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "Where the unresolved issues are primarily legal rather than factual, summary judgment is

particularly appropriate." Koehn v. Indian Hills Community College, 371 F.3d 394, 396 (8th Cir. 2004).

**B.      Statutory Background**

The instant motion implicates two related statutes that govern employment in the railroad industry: the FELA and 49 U.S.C. § 20109. The FELA provides a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees. Atchison, T.&S.F. Ry. Co. v. Buell, 480 U.S. 557, 561 (1987). Under the FELA, a railroad's duty is to provide its employees with a reasonably safe place in which to work. Inman v. Baltimore & Ohio R.R., 361 U.S. 138, 140 (1959). If a plaintiff proves a breach of that duty, causation, and damages, liability can be imposed. Adams v. CSX Transp., Inc., 899 F.2d 536 (6th Cir. 1990)

Since 1980, the Federal Rail Safety Act ("FRSA") has prohibited railroads from disciplining or otherwise retaliating against railroad workers who file complaints about or refuse to work in the face of hazardous conditions. Pub. L. No. 96-423, 94 Stat. 1815 (1980). In 2007 and 2008, the FRSA was amended to expand the protections afforded railroad employees. Included among the new provisions is 49 U.S.C. § 20109(c)(1).

Both the 1980 and 2007 versions of the FRSA contain a critical provision prohibiting the filing of overlapping claims. Now codified at 49 U.S.C. § 20109(f), the statute unambiguously provides that "[a]n employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier." As discussed above, § 20109 required that Plaintiff file an administrative complaint with OSHA prior to filing suit.

When Plaintiff did so, OSHA rejected that complaint based on the plain language of § 20109(f). Facts, ¶ 20.

C.   **49 U.S.C. § 20109(f) Bars Plaintiff's Third Claim for Relief**

Section 20109(f) is simple and straightforward.  A railroad employee is prohibited from maintaining a claim under § 20109 if he or she is also seeking protection "under another provision of law for the same allegedly unlawful act of the railroad carrier."  Here, as OSHA has already concluded, Plaintiff seeks to do exactly that.  His second claim for relief seeks to recover under the FELA for Union Pacific's alleged delay or refusal to take Plaintiff to the hospital following his alleged heat stroke.  Facts, ¶¶ 12-17.  His third claim for relief seeks to recover under § 20109 for the exact same allegedly unlawful act of delaying his medical treatment.  Facts, ¶ 18.  Plaintiff's third claim for relief therefore fails.

Plaintiff's handling of this case proves the overlapping nature of these claims.  Plaintiff's expert witnesses have offered opinions that Dalebout's actions violated Union Pacific's internal policies, and that these actions caused a worsening of Plaintiff's medical condition.  Facts, ¶¶ 13-17.  Thus, Plaintiff is definitely seeking protection under both the FLEA and § 20109 for Dalebout's alleged actions.

Statutory construction begins with the plain text of the statute and, if that text is unambiguous, it ends there as well.  E.g., Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have said time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); United States v. Ron Pair Enters., 489 U.S. 235, 241-42 (1989) (if the statute's language is plain, the inquiry ends with the

language itself).  As the Supreme Court has repeatedly explained, when the statute's language is plain, "the sole function of the courts is to enforce it according to its terms."  Id. at 241.

Under § 20109(f), Plaintiff's third claim for relief is barred if:  (a) as a result of the same allegedly "unlawful act of the railroad carrier"; (b) Plaintiff is "seek[ing] protection under both [§ 20109] and another provision of law . . . ."  Both of these conditions are satisfied.  First, both the second and third claims for relief allege the same alleged unlawful act – specifically, that Union Pacific interfered with Plaintiff's medical treatment on June 28, 2012, when Dalebout spoke to Plaintiff while he was on his way to the hospital, and allegedly had him return to the railyard.  Second, based on that alleged act, Plaintiff clearly "seek[s] protection under both [§ 20109] and another provision of law."  In his second claim for relief, Plaintiff seeks protection under the FELA, while his third claim for relief seeks protection under § 20109.  The fact that these two claims are based on different legal theories is irrelevant.  Both claims seek recovery for the same alleged delay in medical treatment, i.e.," the same allegedly unlawful act."  As OSHA concluded during the administrative handling of this matter, Plaintiff's § 20109 action is therefore barred.  Sereda v. Burlington N.S.F.R. Co., 2005 WL 5892133, *4 (S.D. Iowa Mar. 17, 2005) (finding that, under a prior version of § 20109, a plaintiff could not bring a wrongful discharge of disability discrimination claim and a § 20109 claim regarding his termination because the phrase "same allegedly unlawful act" "is addressed not to the **character** or motivation of the employer's allegedly unlawful act, **but to the act itself**.") (emphasis added).[4]

---

[4] At the time Sereda was decided, § 20109 contained language stating that it preempted state law claims.  Since that time, the statute has been amended to provide that § 20109 does not preempt such claims.  However, when § 20109 was amended, Congress did not make any substantive change to the language now found at § 20109(f).  2005 WL 5892133 at *4 (quoting the pre-amendment language, then codified in § 20109(d) as follows:  "An employee . . . may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the carrier.").  Thus, the FRSA amendments do not undermine Sereda's interpretation of § 20109(f)'s plain language.

### D. The Present Case Is Distinguishable From § 20109(f) Decisions Involving Plaintiffs' Resort to Railway Labor Act Arbitration

In its Order denying Union Pacific's Motion to Dismiss, the Court cited cases in which defendants had asserted § 20109(f) defenses because, in addition to filing § 20109 claims, plaintiffs had also sought arbitration under a collective bargaining agreement between the railroad and their union. A typical example is the Seventh Circuit's decision in Reed v. Norfolk S. Ry. Co., 740 F.3d 420 (7th Cir. 2014), previously cited by the Court. In Reed, the Seventh Circuit rejected the argument that a plaintiff was "seek[ing] protection under . . . another provision of law" by pursuing a claim under a collective bargaining agreement. As the court held, such an employee is not invoking a "provision of law" but is instead seeking "to vindicate his contractual rights *under a collective bargaining agreement*." Id. at 424 (emphasis in original) (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 49 (1974)). The fact that the obligation to arbitrate arose under a federal statute – the Railway Labor Act – was not significant.

As this Court properly recognized, Reed and other cases analyzing the application of § 20109(f) to the collective bargaining agreement arbitration are inapposite. In those cases, § 20109(f) is not implicated because the plaintiff's arbitration claim asserts only contractual claims. For § 20109(f) to apply, a plaintiff must seek protection under both § 20109(f) and "another provision of law." Reed holds that a collective bargaining agreement is not a "provision of law."

In the instant case, however, Plaintiff is most assuredly seeking protection under both § 20109(f) and "another provision of law." Plaintiff not only sues under § 20109, but also under the FELA, another federal statute. Thus, unlike the situation in Reed, Plaintiff's claims in the present case clearly run afoul of § 20109(f).

In dicta, the Reed court went on to suggest that § 20109(f) only applies if a plaintiff asserts a claim under § 20109 and another anti-retaliation or whistleblower statute. Id. at 425-26. This Court cited that language in its prior ruling. For the reasons explained below, Reed's dicta is incorrect and should not be followed.

Again, if a statute is clear, a court must enforce it as written. Ron Pair Enters., 489 U.S. at 241-42. Here, § 20109(f) is unambiguous. "An employee may not seek protection under both this section [i.e., § 20109] and another provision of law for the same allegedly unlawful act of the railroad carrier." Nowhere in the statutory language did Congress limit § 20109(f)'s reach to cases where a plaintiff seeks protection under both § 20109 and another anti-retaliation or whistleblower statute. Congress certainly could have limited § 20109(f) in this way if it wished to. But it did not. It broadly proclaimed that an employee could not seek protection under § 20109 and any other provision of law. Reed's dicta does violence to the plain language of the statute by inserting words into the law that Congress did not put there. This is something that courts are not permitted to do. As the Supreme Court has held, "We have said time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Germain, 503 U.S. at 253-54.[5]

The Supreme Court's decision in Sebelious v. Cloer, 133 S. Ct. 1886 (2013), illustrates the error in Reed's dicta. Cloer arose under a provision of the National Childhood Vaccine

---

[5] Ratledge v. Norfolk S. Ry. Co., No. 1:12-CV-402, 2013 WL 3872792 (E.D. Tenn. July 25, 2013), is not to the contrary. Ratledge held that a plaintiff who proceeds to arbitration under his union collective bargaining agreement is not seeking protection under "another provision of law" for purposes of § 20109(f). Like Reed, Ratledge concludes that the claim being made in arbitration is contractual, not statutory. In so holding, Ratledge states that the word "another" as used in § 20109(f) should be read to mean something "similar in kind of § 20109." Id. at *13. But this ruling does not endorse Reed's dicta; what made arbitration not similar to the § 20109 claim was that the former was contractual, while the latter was statutory. Id. at *13-14. The Ratledge court never stated that § 20109(f) did not apply unless a plaintiff was pursuing both a § 20109 claim and a claim under another whistleblower or anti-retaliation statute.

Injury Act (the "NCVIA") that permits a court to award attorneys' fees to an unsuccessful applicant for recovery so long as the claim "was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. at 1890 (quoting 42 U.S.C. § 300aa-15(e)(1)). Cloer filed a petition for benefits, which was denied as untimely. The government then opposed her application for attorneys' fees, contending that the fee-shifting statute should be read to prohibit such an award if the petition was untimely. The Supreme Court rejected this argument, finding that the only requirements for an award of attorneys' fees under the plain statutory language was that the petition have been brought in good faith and have a reasonable basis. As the Court held, "If Congress had intended to limit fee awards to timely petitions, it could easily have done so." Id. at 1893.

      The same is true here. Just as Congress could have easily limited fee awards under the NCVIA to timely petitions, Congress could have easily written § 20109(f) to provide that it only applied if a plaintiff sought protection under another whistleblower or anti-retaliation statute. Instead, it prohibited § 20109 claims whenever a plaintiff seeks protection under "another provision of law" (not "another anti-retaliation or whistleblower provision of law"). Reed's dicta violates the Supreme Court's teaching in Cloer.

      Reed's dicta also misreads 49 U.S.C. § 20109(h). Again, the statutory language is clear. Under § 20109(h), "Nothing in this section [i.e., § 20109] shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law . . . ." Thus, § 20109(h) precludes any argument that the existence of a remedy under § 20109 negates greater substantive rights an employee may have from another source. Union Pacific has never argued that any "rights, privileges, or remedies" that Plaintiff may have under the FELA (or any other provision

of law) are trumped by § 20109. Plaintiff's ability to enforce his rights and obtain a remedy under the FELA remain undiminished. However, § 20109(f) imposes consequences on his decision to pursue relief under the FELA. Having elected to pursue relief under that other "provision of law," § 20109(f) bars Plaintiff from also seeking relief for the same alleged action under § 20109(c)(1).

All § 20109(h) prohibits is an argument that the existence of a remedy under § 20109 bars Plaintiff from bringing a claim under another statute or legal theory. Thus, § 20109(h) makes it clear that § 20109 differs from, for example, the Employee Retirement Income Security Act ("ERISA"). ERISA provides the exclusive means to recover in any lawsuit relating to the employee benefit plan; a plaintiff is barred from bringing such a claim under any state statute or common law theory. 29 U.S.C. § 1144(a); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53-54 (1987). In contrast, under § 20109(h), the fact that a remedy exists under § 20109 does not bar a claim under other statutes. However, § 20109(h) says nothing about whether, if an election is made to bring a claim under another statute (as Plaintiff has done here under the FELA), a § 20109 claim can also be brought. That question is answered in the negative by § 20109(f), and that is exactly why OSHA dismissed Plaintiff's Complaint.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, Union Pacific respectfully requests that it be granted summary judgment on Plaintiff's third claim for relief.

Respectfully submitted,

THOMPSON COBURN LLP


By:      /s/ Tabitha G. Davisson
    Clifford A. Godiner
    Tabitha G. Davisson
    One US Bank Plaza
    St. Louis, MO 63101
    (314) 552-6433
    FAX:  (314) 552-7433
    cgodiner@thompsoncoburn.com
    tdavisson@thompsoncoburn.com

and

LAMSON, DUGAN & MURRAY, LLP

By:   David J. Schmitt #19123
    10306 Regency Parkway Drive
    Omaha, NE 68114
    (402) 397-7300
    FAX:  (402) 397-8450

Attorneys for Defendant
Union Pacific Railroad Company

### CERTIFICATE OF SERVICE

    I hereby certify that on July 15, 2014, I electronically filed the foregoing with the Court using the CM/ECF system, which will send notification of such filing, via electronic mail, to all attorneys of record for the Plaintiff.

    /s/ Tabitha G. Davisson