IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JARED L. WHITT,<br><br>      Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware corporation;<br><br>      Defendant. | 8:12CV358<br><br>MEMORANDUM AND ORDER |

   This matter is before the Court on defendant's motions in limine to exclude the testimony of George Gavalla, Filing No. 101, and motion in limine regarding the testimony of Douglas Casa, Ph.D., Filing No. 111. This is an action for damages for alleged negligence under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.* and discrimination under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109.

**Background**

   The Court previously outlined the facts in this case:

Defendant Union Pacific Railroad Company employed the plaintiff as an anchor applicator machine operator. The plaintiff contends that on or about June 12, 2012, he injured his left arm while lifting a bag of anchors. The plaintiff alleges that this left arm injury may have predisposed him to the injury set forth in his second claim for relief.

In his second claim for relief, the plaintiff asserts that on June 28, 2012, he operated an anchor applicator machine on a very hot day with high humidity. The plaintiff sat down in the shade when he began to feel weak and tired, with tingling in his hands, arms, legs, and feet. When the plaintiff could not get up, his supervisor, Dave Birt, loaded him into his truck and drove toward the hospital. While en route to the hospital, Mr. Birt received a call from Manager Talmadge Dalebout. Mr. Dalebout directed Mr. Birt to bring the plaintiff back to the worksite. The plaintiff contends that Mr. Birt suggested he continue to the hospital, but Mr. Dalebout directed them to the briefing area, where they attempted to cool the plaintiff down using water and an air conditioner. The plaintiff sought medical treatment in the emergency room that evening.

After this incident, the plaintiff alleges that he attempted to return to work on July 9, 2012, but he continued to experience swelling in his left hand and pain and numbness in his hand and arm. The plaintiff contends that his supervisor took him at that time to the emergency room on July 12, 2012, because of his symptoms, and he has been off work since July 14, 2012. The plaintiff asserts that he received treatment for the residuals of heat stroke, and the doctors diagnosed him with thoracic outlet syndrome, brachial plexus lesions, carpal tunnel syndrome, and ulnar neuropathy on his left side. The plaintiff argues that these injuries directly resulted from defendant's negligence.

The plaintiff seeks to recover damages under the FELA for his claim that defendant breached its duty to exercise ordinary care to provide employees with a safe place to work. The plaintiff claims the defendant failed to implement reasonably safe methods and procedures for the performance of work, failed to implement reasonably safe methods and procedures to train the plaintiff and his supervisors to guard against heat stroke, failed to implement procedures to train supervisors to respond appropriately to heat stroke, and breached its duty to comply with its own job safety rules.

In his third claim for relief, the plaintiff asserts that the defendant's interference with his medical treatment violated the terms of the FRSA, 49 U.S.C. § 20109(c)(1), which states, "[a] railroad carrier or person covered under this section may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment." The plaintiff seeks to enforce the FRSA pursuant to 49 U.S.C. § 20109(d), which permits enforcement when an employee alleges discrimination in violation of 49 U.S.C. § 20109(c). The plaintiff contends the defendant discriminated against him when it delayed his medical care, and therefore, enforcement is appropriate pursuant to subsection (d). The plaintiff seeks punitive damages for the defendant's alleged FRSA violation.

Filing No. 106, Memorandum and Order, at 1-3.

### Legal Standards

The standards for the admissibility of expert testimony are found in Fed. R. Evid. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It is a trial court's responsibility to act as a gatekeeper, ensuring that all expert testimony is both relevant and reliable before admitting it at trial. *Daubert v. Merrell Dow Pharms.,* 509

U.S. 579, 589 (1993). This requirement applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

The Eighth Circuit recognizes a three part test for determining the admissibility of an expert's testimony under Rule 701. Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001); Polski v. Quigley Corp., 538 F.3d 836, 839 (8th Cir. 2008). First, evidence based upon scientific, technical or other specialized knowledge must be useful to the jury in deciding an ultimate issue of fact. This is an application of Fed. R. Evid. 401, evidence must be relevant. Second, the expert witness must be qualified to assist the finder of fact. Finally, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that it may properly provide the assistance the jury requires if it accepts the testimony as true. Lauzon, 270 F.3d at 686; Polski, 538 F.3d at 839.

"'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995), quoting Loudermill v. Dow Chem. Co., 863 F.2d 566, 570 (8th Cir. 1988). Only when the expert's opinion is "'so fundamentally unsupported that it can offer no assistance to the jury'" must the opinion be excluded. Hose, 70 F.3d at 974 quoting Loudermill, 863 F.2d at 570. "Doubts regarding the usefulness of an expert's testimony are resolved in favor of admissibility." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 758 (8th Cir. 2006).

### Discussion

*A. Testimony of George Gavalla*

Defendant contends that Gavalla should not be permitted to testify, as his testimony relates to matters that exceed his area of expertise, relates to matters beyond his expertise,

and is of a legal nature which is the Court's responsibility to so instruct the jury. Gavalla indicates he is a "national railroad safety executive." Filing No. 102-1, Curriculum Vitae, Appendix A, Ex. 1 at 26. Defendant contends that there is no such experience supporting this claim listed on Gavalla's resume. However, the Court notes that Gavalla worked for the Brotherhood of Railroad Signalman labor union, and thereafter, he worked for the Federal Railroad Administration (FRA), where he worked in the areas of fatigue management, remote control locomotive operation, and grade crossing safety, and he has substantial knowledge and experience regarding safety issues. *Id.* at 28-29. Additionally, defendant notes that Gavalla has no medical, legal or human resources training, and the Court finds that to be true based upon a reading of the curriculum vitae.

Gavalla's report lists 20 "Conclusions" regarding plaintiff's three claims. *Id.* at 19-22. However, plaintiff has now indicated he will not offer Gavalla's opinions as to conclusion numbers 1-11. Filing No. 116 at 2. As alleged in Count III, plaintiff addresses the legal requirement that Union Pacific not hinder medical care under 49 U.S.C. § 20109(c)(1). Gavalla has a number of opinions in this regard, including why certain reports are important under the Act; information regarding legislative history; Gavalla's statements and conclusions regarding interference with medical care by defendant's employees; his opinion that a single violation of the FRSA negatively impacts railroad safety; and his testimony that Union Pacific allegedly violated its own policies regarding treatment. Defendant argues that all of these conclusions are irrelevant.

Plaintiff counters arguing that many of the issues Gavalla will address go to punitive damages. Plaintiff contends that accurate reports of safety are not happening, and there is intimidation of employees to not report. Plaintiff argues that Gavalla is uniquely qualified to address the regulations required by the FRA and the policies in place at Union Pacific. Plaintiff relies on a similar case wherein Gavalla testified in a similar fashion. In *Barati v.*

4

*Metro-North R.R. Commuter R.R. Co.,* 939 F. Supp. 2d 143 (D. Conn. 2013), the plaintiff was injured and was then disciplined and terminated after reporting his injury. He brought a claim under the FELA for his injury, combined with a claim under the FRSA for the discipline he received, alleging the discipline was retaliatory in violation of the FRSA. The jury returned a verdict for the plaintiff on both the FELA and FRSA claims, and awarded the plaintiff punitive damages on the FRSA claim. The railroad filed a motion in limine to totally preclude Mr. Gavalla from testifying. The Court granted the motion in part, but allowed Mr. Gavalla to testify regarding his experience and knowledge as head of the FRA Office of Safety, which included testimony regarding the rules and safety regulations the railroads were required to implement and the Internal Control Plan (ICP) of the defendant and its requirements. *Id.*, at 147-48.

The Court agrees that Gavalla has extensive background and history in the railroad industry, particularly with regard to certain safety and accident issues. The Court also agrees with the analysis in *Barati*. At this point in time, the Court will permit Mr. Gavalla to testify generally as to the safety rules and safety regulations that railroads are required to implement, defendant's ICP and its requirements, the importance of accurate reporting by railroads and why the FRA needs such accurate data, the purpose of an ICP, categories of conduct that violate FRA regulations and defendant's ICP, the reasons that accurate data may not be reported and why the reporting of accurate data matters.

However, if Mr. Gavalla strays too far from that which is relevant in this case, the defendant is free to object, and the Court will rule on the objection at that time. In addition, the Court will not permit Gavalla to testify that certain behaviors violated the federal law. Under Eighth Circuit law, the meaning of a statute is not a proper subject for expert testimony. Such legal matters "are for the trial judge, and it is the judge's job to instruct the jury on them." *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.,* 320 F.3d

838, 841 (8th Cir. 2003). Nor will the Court permit Gavalla to testify as to what constitutes intimidation or interference with medical decisions in this case. In addition, Gavalla's conclusion that if Union Pacific violated § 20109(c)(1), it will have "negatively impacted railroad safety in general and safety on the UP, in particular" is not supported by any evidence. Filing No. 102, Ex. 1, ¶ 18 at 21. Under *Khumo* it is subjective speculation and is inadmissible  *See* also, *Presley v. Lakewood Eng'g & Mfg. Co.,* 553 F.3d 638, 643 (8th Cir. 2009) (citing *Daubert,* 509 U.S. at 593-94); *United States Gypsum Co. v. Lafarge N. Am.,* 670 F. Supp. 2d 748, 756 (N.D. Ill. 2009). Likewise, the Court finds that whether Union Pacific complied with its own policies is not the type of testimony that requires an expert. As the Eighth Circuit held in *Ellis v. Miller Oil Purchasing Co.,* 738 F.2d 269, 270 (8th Cir. 1984), "[w]here the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous."

### B.  Expert Testimony of Douglas Casa, Ph.D.

Dr. Douglas Casa issued a report in this case. Filing No. 123-2. Dr. Casa has extensive education, training and experience in the areas of heat stress, heat-related injuries and illnesses, and prevention, recognition and treatment of heat-related injuries and illnesses. His background is in exercise physiology, and he is currently a professor of kinesiology at the University of Connecticut. He has authored or contributed to approximately 150 published works. Among the numerous articles and protocols he has authored, Dr. Casa co-wrote, with Dr. O'Connor (another of Plaintiff's experts), the heat stroke care policy for the U.S. Army. He is also the Chief Operating Officer of the Korey Stringer Institute. He has personally treated over 167 heat stroke victims. Based upon his review of plaintiff's symptoms, the testimony of the witnesses who were with plaintiff after the incident, and the type and duration of plaintiff's lingering sequelae, Dr. Casa opines that

6

plaintiff had a mild heat stroke, and it is possible he will have lingering sequelae that will carry forward for the rest of his life.

Defendant contends that Casa wants to give a medical opinion regarding the initial injury and its exacerbation by the heat-related incident. Casa also opines that there was an irreversible delay in giving the plaintiff proper care. The Court will permit Casa to testify in his areas of expertise, namely heat related issues. However, the Court will not permit him to testify as to medical causation, as he is not a medical doctor.

Casa also has an opinion regarding whether defendant violated the FRA and the FRSA. Plaintiff agrees that he will not be asking Casa if defendant violated these laws and regulations. Casa does, however, intend to testify regarding the flaws in defendant's heat stress prevention program training and other related policies. Plaintiff likewise agrees that he will not ask Casa to testify as to legal conclusions, but will ask him, based on his expertise, what constitutes a safe working environment under these circumstances. Likewise, Casa may testify as to the factors[1] he believes support the theory that plaintiff suffered a heat stroke.[2] The Court agrees that these areas are in fact in the expertise of Casa, and they will be helpful to the trier of fact. If, however, defendant believes plaintiff exceeds this scope or offers legal conclusions, he may object during trial.

---

[1] Such factors as espoused by Casa include (1) plaintiff did not recover quickly once activity was ceased and cooling began; (2) plaintiff suffered from a wide array of symptoms in the immediate aftermath of the heat stroke, which included CNS dysfunction; and, (3) plaintiff had an array of lingering symptoms that lasted for days after the heat stroke.

[2] Defendant argues this evidence is not admissible, as the expert has no information regarding plaintiff's core temperature. While this may be true, the missing information is due in large measure to the fact that defendant's employees did not take the plaintiff to the hospital at the time of the incident, and Casa is using other factors that support his opinion.

7

THEREFORE, IT IS ORDERED THAT:

1. Defendant's motion in limine, Filing No. 101, is granted in part and denied in part as set forth herein.

2. Defendant's motion in limine, Filing No. 111, is granted in part and denied in part as set forth herein.

Dated this 12th day of August, 2014.

                                  BY THE COURT:

                                  s/ Joseph F. Bataillon
                                  United States District Judge